**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BERNARD WEATHERSBEE, | ) | CASE NO. 1:20-CV-01423-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN DAVID GRAY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.      Introduction

Bernard Weathersbee ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is an Ohio prisoner who is currently serving an aggregate prison term of twenty-nine years for rape, illegal use of a minor in nudity-oriented material or performance, and unlawful sexual conduct with a minor. (ECF No. 10-1, Ex. 11 at 1, 3). He now asserts four grounds for relief. (ECF No. 1 at 6–11). Warden David Gray ("Respondent") filed an amended return of writ on October 30, 2020. (ECF No. 10). Petitioner filed a traverse on November 23, 2020. (ECF No. 11).

This matter was referred to the Court under Local Rule 72.2 to prepare a report and recommendation on Petitioner's petition and other case-dispositive motions. Because Petitioner has presented only procedurally defaulted and meritless claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.    Relevant Factual Background

The Ohio Court of Appeals for the Eleventh Appellate District set forth the following facts[1] on direct appeal:

> {¶2} Weathersbee lived with his girlfriend, Amanda Fitzgerald ("Amanda"), and her minor daughter, H.F., in Mineral Springs, Ohio. On March 25, 2016, Amanda and H.F. appeared at the Niles Police Department to report that Weathersbee had been sexually assaulting H.F. for approximately ten years. The sexual conduct alleged included both sexual acts and solicitation of sexually explicit photographs, videos, and messages on Weathersbee's cell phone. Weathersbee was subsequently arrested.
>
> {¶3} On May 18, 2016, Weathersbee was indicted on twenty-nine counts, including seventeen counts of Rape (F-1), seven counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance (F-2), one count of Unlawful Sexual Conduct with a Minor (F-3), three counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance (F-4), and one count of Tampering with Evidence (F-3).
>
> {¶4} On May 19, 2016, Weathersbee entered a plea of not guilty at his arraignment on the indictment, and bond was set at $250,000.00. Counsel for Weathersbee requested funds to retain an expert for trial, which the trial court granted. Thereafter, on December 29, 2017, counsel filed a motion in limine challenging the process used to extract photographs, videos, messages, and other content from Weathersbee's cell phones. The motion was denied on June 7, 2018, after a hearing, and the matter was set for trial.
>
> {¶5} Throughout the proceedings, Weathersbee sent several letters to the trial court, which were filed to the record by the clerk of courts, expressing his dissatisfaction with his appointed counsel. His original appointed counsel resigned from representation due to a personal conflict. Weathersbee refused multiple plea offers from the state and, according to the prosecution and defense counsel, was insistent on going to trial.
>
> {¶6} On the morning of trial, October 22, 2018, Weathersbee appeared with counsel and requested to voice his concerns on the record. He was permitted to address the court,

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

where he expressed his continuing frustration with his appointed defense counsel. In addition to refusing to utilize the expert witness that was hired, Weathersbee asserted that his defense counsel (1) had predetermined that he was guilty and (2) was incapable of proceeding to trial. In support of the latter, Weathersbee disclosed that his counsel had stated that he "does not know how to represent him" and that he would only be able to "hold his hand through a three day slaughter."

{¶7} Defense counsel rebutted Weathersbee's claims on the record by asserting that using an expert witness is an exercise of legal strategy, that neither the expert that had been retained nor any other expert would be helpful to Weathersbee's case, and that he was not optimistic for the results of proceeding to trial in light of the overwhelming evidence Weathersbee faced. Defense counsel acknowledged that he had previously made comments similar to those Weathersbee claimed regarding a "slaughter," but he stated they were with regard to his outlook on trying the matter to a jury. Defense counsel was clear in his rebuttal that he was ready, willing, and capable of proceeding to trial.

{¶8} Following a recess, Weathersbee entered a plea of guilty to seventeen counts of Rape (F-1), six counts of Illegal Use of a Minor in Nudity-Oriented Material or Performance (F-2), and one count of Unlawful Sexual Conduct with a Minor (F-3). Pursuant to the terms of the plea agreement, Weathersbee agreed to a jointly recommended prison sentence of 29 years total. The trial court engaged in a plea colloquy with Weathersbee before accepting the oral and written plea of guilty, which began as follows:

> The Court: Are you currently under any drugs or alcohol to cause your judgment to be impaired?
>
> The Defendant: No, sir.
>
> The Court: Can you read and write the English language?
>
> The Defendant: Yes, sir.

{¶9} The trial court then stated the maximum penalties for each charge, informed Weathersbee that a prison term was mandatory, and informed him of his sex offender status and post-release control sanctions. Following that, the court inquired:

> The Court: Do you understand the seriousness of the offenses and what the Court could sentence you to?

3

The Defendant: Yes, sir.

{¶10}  The trial court also informed Weathersbee of the following regarding the elements of the charges he faced:

> The Court: If you wanted to in this case you could have a jury trial. That means the Court would impanel 12 people. In order to find you guilty they would have to find to their unanimous satisfaction, that means all 12 would have to agree that the State of Ohio proved its case against you by a burden of proof called beyond a reasonable doubt.
>
> In this particular matter, they would have to prove with respect to Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 13, 14, 16, 17, 21, 22 and 23 that you did engage in sexual conduct with another when you purposely compelled the other person to submit by force or threat of force in Trumbull County, Ohio.
>
> Regarding Counts 10, 12, 15, 18, 19 and 20 the State would have to prove that you did photograph any minor who is not your child or ward in a state of nudity or create, direct, produce or transfer any material or performance that shows the minor in states of nudity in Trumbull County, Ohio.
>
> Regarding Count 24 the State would have to prove that you, who are 18 years of age or older, did engage in sexual conduct with another, not your spouse, when you knew the other person was 13 years of age or older but less than 16 years of age, or you were reckless in that regard, and the offender is 10 or more years older than – or you were 10 years more older [sic] than the other person in Trumbull County, Ohio.
>
> Do you understand what your rights to a jury trial would be and what the State would have to prove?
>
> The Defendant: Yes.
>
> The Court: Do you understand by entering a guilty plea here today you would be giving up those rights?
>
> The Defendant: Yes, sir.

{¶11}  The trial court then continued with the colloquy, discussing Weathersbee's waiver of rights and his plea as follows:

4

The Court: Also at that jury trial you have the right to cross examine or confront witnesses and that means you or your attorney could ask questions of any witnesses called upon to testify against you. You also have the right to compulsory process and that means you or your attorney could subpoena witnesses to testify on your own behalf. You also have a Fifth amendment right and that means the State cannot force you or compel you to testify against yourself. Do you understand each and every of those individual rights?

The Defendant: Yes, sir.

The Court: Do you understand by entering a guilty plea here today you would be giving up each and every of those individual rights?

The Defendant: Yes.

The Court: If you were convicted at that jury trial you also have what's called the automatic right to appeal and that means you or your attorney could file a paper with our Court of Appeals stating what errors or irregularities that you or your attorney think occurred at the trial of your case. The Court of Appeals would have to hear that appeal but they may not necessarily agree on what you or your attorney think the errors or irregularities were. If you cannot afford an attorney to represent you on that appeal, the Court would appoint one for you, and if you could not afford a transcript of the proceedings, the Court would provide that for you. Do you understand what your Court of Appeals rights are?

The Defendant: Yes.

The Court: Do you understand by entering a guilty plea here today you would be giving up those rights?

The Defendant: Yes.

The Court: Have any promises or threats been made to you to enter this plea of guilty?

The Defendant: No, sir.

* * *

5

The Court: Are you satisfied with your attorneys in this case?

The Defendant: Yes, sir.

The Court: Do you think they've done everything they could on your behalf?

The Defendant: Yes.

The Court: Are you satisfied your client understands his constitutional rights and the effect of the waiver thereof? Defense Counsel: Yes.

The Court: How do you plead to the amended indictment?

The Defendant: Guilty.

The Court: I'm showing you this document called Finding on Guilty Plea to Amended Indictment, is that your signature?

The Defendant: Yes, sir.

The Court: Did you sign that freely and voluntarily?

The Defendant: Yes.

The Court: Any promises or threats made to you to sign this document?

The Defendant: No, sir.

The Court: Do you understand what's contained in this document?

The Defendant: Yes, sir.

The Court: And what I've explained to you?

The Defendant: Yes, sir.

The Court: Any questions whatever?

The Defendant: No, sir.

The Court: Still want to plead guilty?

6

The Defendant: Yes, sir.

{¶12} Thereafter, Weathersbee waived a presentence investigation. The trial court accepted the terms of the plea agreement, sentencing Weathersbee to the agreed sentence of 29 years in prison.

*State v. Weathersbee*, No. 2018-T-0099, 2019-Ohio-5307, ¶¶ 2–12 (11th Dist. Ohio Dec. 23, 2019).

## III.  Relevant State Procedural History

### A. Indictment

Petitioner was indicted on May 18, 2016 for twenty-nine counts:

Count 1: Rape, a felony of the first degree, in violation of O.R.C. 2907.02(A)(1)(b), (B), 2971.03(B)(1)(b), and 2971.03(B)(1)(c);

Count 2: Rape, a felony of the first degree, in violation of O.R.C. 2907.02(A)(1)(b), (B), 2971.03(B)(1)(b), and 2971.03(B)(1)(c);

Count 3: Rape, a felony of the first degree, in violation of O.R.C. 2907.02(A)(1)(b), (B), 2971.03(B)(1)(b), and 2971.03(B)(1)(c);

Count 4: Rape, a felony of the first degree, in violation of O.R.C. 2907.02(A)(1)(b), (B), 2971.03(B)(1)(b), and 2971.03(B)(1)(c);

Count 5: Rape, a felony of the first degree, in violation of O.R.C. 2907.02(A)(1)(b), (B), 2971.03(B)(1)(b), and 2971.03(B)(1)(c);

Count 6: Rape, a felony of the first degree, in violation of O.R.C. 2907.02(A)(1)(b), (B), 2971.03(B)(1)(b), and 2971.03(B)(1)(c);

Count 7: Rape, a felony of the first degree, in violation of O.R.C. 2907.02(A)(1)(b), (B) and 2971.03(B)(1)(c);

Count 8: Rape, a felony of the first degree, in violation of O.R.C. 2907.02(A)(1)(b), (B) and 2971.03(B)(1)(c);

Count 9: Rape, a felony of the first degree, in violation of O.R.C. 2907.02(A)(1)(b), (B) and 2971.03(B)(1)(c);

Count 10: Illegal use of a minor in nudity-oriented material or performance, a felony in the second degree, in violation of O.R.C. 2907.323(A)(1), (B);

Count 11: Rape, a felony in the first degree, in violation of O.R.C. 2907.02(A)(2), (B);

Count 12: Illegal use of a minor in nudity-oriented material or performance, a felony in the second degree, in violation of O.R.C. 2907.323(A)(1), (B);

Count 13: Rape, a felony in the first degree, in violation of O.R.C. 2907.02(A)(2), (B);

Count 14: Rape, a felony in the first degree, in violation of O.R.C. 2907.02(A)(2), (B);

Count 15: Illegal use of a minor in nudity-oriented material or performance, a felony in the second degree, in violation of O.R.C. 2907.323(A)(1), (B);

Count 16: Rape, a felony in the first degree, in violation of O.R.C. 2907.02(A)(2), (B);

Count 17: Rape, a felony in the first degree, in violation of O.R.C. 2907.02(A)(2), (B);

Count 18: Illegal use of a minor in nudity-oriented material or performance, a felony in the second degree, in violation of O.R.C. 2907.323(A)(1), (B);

Count 19: Illegal use of a minor in nudity-oriented material or performance, a felony in the second degree, in violation of O.R.C. 2907.323(A)(1), (B);

Count 20: Illegal use of a minor in nudity-oriented material or performance, a felony in the second degree, in violation of O.R.C. 2907.323(A)(1), (B);

Count 21: Rape, a felony in the first degree, in violation of O.R.C. 2907.02(A)(2), (B);

Count 22: Rape, a felony in the first degree, in violation of O.R.C. 2907.02(A)(2), (B);

Count 23: Rape, a felony in the first degree, in violation of O.R.C. 2907.02(A)(2), (B);

Count 24: Unlawful sexual conduct with a minor, a felony in the third degree, in violation of O.R.C. 2907.04(A), (B)(3);

Count 25: Illegal use of a minor in nudity-oriented material or performance, a felony in the fourth degree, in violation of O.R.C. 2907.323(A)(3), (B);

Count 26: Illegal use of a minor in nudity-oriented material or performance, a felony in the fourth degree, in violation of O.R.C. 2907.323(A)(3), (B);

Count 27: Illegal use of a minor in nudity-oriented material or performance, a felony in the fourth degree, in violation of O.R.C. 2907.323(A)(3), (B);

Count 28: Illegal use of a minor in nudity-oriented material or performance, a felony in the fourth degree, in violation of O.R.C. 2907.323(A)(3), (B); and

Count 29: Tampering with evidence, a felony in the third degree, in violation of O.R.C. 2921.12(A)(1), (B).

(ECF No. 10-1, Ex. 1 at 1, 20). At arraignment, Petitioner pleaded not guilty to all charges. (ECF No. 10-1, Ex. 2 at 1).

## B.  Trial, Guilty Plea, and Sentencing

The case proceeded to trial on October 22, 2018. *Weathersbee*, 2019-Ohio-5307, at ¶ 6. However, after a trial recess, Petitioner pleaded guilty to seventeen counts of rape, six counts of illegal use of a minor in a nudity-oriented material or performance, and one count of unlawful sexual conduct with a minor. *Id.* at ¶ 8. The State likewise agreed to nolle Counts 25, 26, 27, 28, and 29. (ECF No. 10-1, Ex. 11 at 8). On October 24, 2018, the trial court sentenced Petitioner to eleven years for Counts 1–7; eleven years on Counts 8, 9, 11, 13, 14, 16, 17, 21, 22, and 23; seven years on Counts 10, 12, 15, 18, 19, and 20; and sixty months to run concurrently with the other

counts for Count 24. (ECF No. 10-1, Ex. 13 at 3–4). The aggregate prison sentence was twenty-nine years. *Id.*

### C. Direct Appeal

Petitioner filed a notice of appeal with the Eleventh District of the Ohio Court of Appeals on November 21, 2018 and an appellate brief on March 25, 2019. (ECF No. 10-1, Ex. 14 (notice), Ex. 15 (brief)). In his appeal, he raised one assignment of error:

> 1. The Court erred by accepting appellant's guilty plea since his plea was not knowingly, intelligently and voluntarily entered.

(ECF No. 10-1, Ex. 15). The State filed an opposition brief on April 15, 2019. (ECF No. 10-1, Ex. 16).

Soon after, Petitioner filed two pro se motions. First, he filed a motion for stay and abeyance while he terminated his court-appointed appellate counsel. (ECF No. 10-1, Ex. 17). In the motion, Petitioner stated he planned to file a new brief after reviewing transcripts and discovery and would raise the following assignments of error: ineffective assistance of trial counsel, conviction against the manifest weight of the evidence, abuse of discretion by the State, and "other assignments of errors to be determined from transcripts and discovery." (ECF No. 10-1, Ex. 17 at 1). Second, Petitioner filed a motion to dismiss his counsel, withdraw his initial appellate brief, request a sixty-day extension, and obtain all transcripts and discovery in the case. (ECF No. 10-1, Ex. 18 at 1).

The State filed motion to strike Petitioner's pro se motions on May 17, 2019. (ECF No. 10-1, Ex. 19). Petitioner's counsel then filed a motion to withdraw as counsel and allow Petitioner to proceed pro se. (ECF No. 10-1, Ex. 20).

The Court of Appeals granted in part and denied in part Petitioner's pro se motions on June 19, 2019. (ECF No. 10-1, Ex. 22). It granted Petitioner's motions to dismiss counsel and proceed

10

pro se and to stay the proceedings "to the extent he will be given an opportunity to file a supplemental brief on his own behalf." (ECF No. 10-1, Ex. 22 at 1). It denied his motion to strike the initial brief and the State's motion to strike the pro se filings. (ECF No. 10-1, Ex. 22 at 1–2). The court gave Petitioner thirty days to file a supplemental brief and raise additional arguments. (ECF No. 10-1, Ex. 22 at 2).

Petitioner filed a supplemental brief on July 16, 2019 in the Trumbull County Court of Common Pleas. (ECF No. 10-1, Ex. 23 at 1).[2] The State argued this brief was incorrectly filed on July 25, 2029, but nonetheless, addressed each of Petitioner's three assignments of error in its response brief. (ECF No. 10-1, Ex. 23). Petitioner later filed an amended supplemental brief on August 28, 2019, raising the same three assignments of error the State addressed in its July 25, 2019 brief:

> 1. Petitioner's guilty plea was not knowingly and voluntary under the due process clause of the Fourteenth Amendment.
>
> 2. Petitioner was denied effective assistance of counsel at trial in violation of the Sixth Amendment.
>
> 3. Petitioner is actually innocent.

(ECF No. 10-1, Ex. 24).

The Ohio Court of Appeals affirmed the trial court's decision on December 23, 2019. (ECF No. 10-1, Ex. 28). The Court reviewed the assignments of error in Petitioner's supplemental brief and found that each lacked merit. *Weathersbee*, 2019-Ohio-5307, at ¶¶ 23, 33, 38.

### D. Supreme Court of Ohio Appeal

---

[2] The State referred to Petitioner's supplemental motion to withdraw his guilty plea, which was filed on July 16, 2019 with the Court of Common Pleas. (*See* ECF No. 10-1, Ex. 33).

Petitioner filed a notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio on January 30, 2020. (ECF No. 10-1, Exs. 29, 30). In his memorandum, Petitioner raised the following propositions of law (sic):

> (1) At the plea hearing the Petitioner did not enter the guilty plea knowingly and voluntarily. The Defendant was forced, contrary to his statement in court at his plea questioning under Crim. R. 11.

> (2) The Defendant was denied effective counsel when the trial attorney was not willing or able to take the case to trial, forcing the Defendant to enter a guilty plea not knowingly and not voluntarily and not intelligently.

(ECF No. 10-1, Ex. 30). The State filed a memorandum in opposition of jurisdiction on February 28, 2020. (ECF No. 10-1, Ex. 31). The Supreme Court of Ohio declined to accept jurisdiction on April 14, 2020. (ECF No. 10-1, Ex. 32).

### E.  Federal Habeas Corpus Petition

Petitioner petitioned pro se that this Court issue a writ of habeas corpus on June 29, 2020. (ECF No. 1). He asserted the following grounds for relief (sic):

> **Ground One:** Guilty plea was not made knowingly and voluntarily in violation to the Due Process Clause of the 14th Amendment (and *Boykin*).

> **Supporting Facts**: Petitioner was coerced/forced to enter a plea because his attorney refused to take the case to trial and mount a defense. Trial court improperly refuted Petitioner to obtain new counsel. Petitioner entered courtroom expecting to move forward with trial, but then [was] coerced to plea[d] guilty when attorney refused to offer a defense. Trial court, in violation of Fed. R. Crim. P. 11 and analogous Ohio R. Crim. P 11, participated in the plea negotiations/coercion. This is evident in the whole of transcripts of proceedings, motion, pleas, and sentencing on Oct. 22, 2018. (see pg. 22-25 of attached "Amended Supplemental Assignment of Error . . . .")[.]

> **Ground Two:** Ineffective Assistance of Counsel at trial in violation of the Sixth Amendment (Defective Assistance + Prejudicial) – Performance constitutionally deficient.

12

**Supporting Facts:** (1) Counsel was unprepared for trial on day scheduled to begin. (2) Refused to take the case to trial. (3) Refused to investigate exculpatory evidence. (4) Repeatedly coerced Petitioner to plead guilty including stating "I will hold your hand and lead you to a three-day slaughter," which he admitted saying in court. (5) Counsel refused Petitioner's insistence of innocence. (6) Counsel prepared no defense since he refused to take the Court to trial. He refused to mount a defense. (7) Counsel refused to discuss or investigate any (8) Petitioner pled guilty because he had no attorney willing to defend him, offer a defense, or go to trial. (9) Petitioner completed prejudicial by attorney's deficiencies in action, and lack of participation in defense. (10) The proceedings would have been different if Petition[er] had an attorney to go to trial. (See pgs. 25-33 of "Amended supplemental assignment of error and brief of appellant") + (pgs. 37 + 38) Counsel's conduct so undermined the proper functioning of the adversarial process that the plea cannot be relied upon as having produced a just result, reducing the proceedings to be hollow formalities upon manifest injustice.

**Ground Three:** Actual Innocence and the manifest injustice of incarceration when innocent.

**Supporting Facts**: (1) There is clear and convincing evidence that Petitioner is innocent of all allegations in indictment, which serves as a gateway through which Petitioner may pass whether the impediment is a procedural bar or expiration of the statute of limitations. (2) Indictment was made on no evidence other than "unauthorized photos", contrary to alleged victim's medical exam, and alleged victim's contradictory statements. (SEE: Ohio Incident Bases Reporting System, OIBRS) (3) By coercing/forcing Petitioner to plead guilty, the Intent was because the State would not be able to prove the complete elements of alleged crime as indicted, against the manifest weight of evidence because of lack of medical, physical, DNA evidence, and the contradictory testimony of alleged victim that the abuse occurred over largely different time frame/period. (4) Alleged electronic + photographic evidence not authenticated by State. (See: pg. 24-42, "Amended supplemental Assignment of Error and brief of Appellant")[.]

**Ground Four**: Manifest Weight of Evidence and Sufficiency of Evidence[.]

**Supporting Facts**: (1) There exists no medical evidence of DNA evidence whatsoever of alleged rape either when reported or over the contradictory span of time. (2) There are no eye witness[]

13

accounts to support State's allegations. (3) Alleged electronic evidence and photographs are unauthenticated. (4) Petitioner denied access to OIBRS report or any investigative report (See Model Penal Code 210.3 (1980, pg. 65-66). (5) At the time in which the alleged victim reported the alleged rape in the truck in the garage (approximately 3pm) the Petitioner was at work in Warren, Ohio with witnesses to verify, this on 3/24/16. (6) Petitioner's Ford F-150 had zero evidence of alleged rape, no DNA, nothing. It simply did not happen at all, not in the truck, not at the time and date, not at that location. (See pgs. 34-37. "Amended Supplemental Assignments of Error . . .)[.]

(ECF No. 1 at 6–11).

## V. Legal Standards

### A. Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Sexton v. Wainwright*, 968 F.3d 607, 609–10 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1064 (2021). There is no dispute that Petitioner timely filed his federal habeas corpus petition within the 28 U.S.C. § 2244(d) one-year statute of limitations. (*See* ECF No. 10 at 12).

### B. Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." § 2241(d). The Court of Common Pleas of Trumbull County sentenced Petitioner, and Trumbull County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review a state court's decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### D. Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007) (citing § 2254(b) and (c)). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F. Supp. 2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of

15

the claim." *Id.* (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### E. Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732–33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at

848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### F. AEDPA Standard of Review

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). The prisoner bears the burden of

19

rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.

## VI. Discussion

### A. Procedurally Defaulted Grounds (Three and Four)

In Grounds Three and Four, Petitioner argues he is actually innocent and that his conviction goes against the manifest weight of evidence and that there is insufficient evidence to convict him. (ECF No. 1 at 9–11). Petitioner first raised Ground Three in his *Amended Supplemental Assignment of Error and Brief of Appellant* on direct appeal. (*See* ECF No. 10-1, Ex. 24). Likewise, Petitioner first raised Ground Four in this habeas petition. (*See* ECF No. 1 at 11). However, neither claim was brought in Petitioner's appeal to the Supreme Court of Ohio, despite Petitioner's claims to the contrary. (*Compare* ECF No. 1 at 10, 12 (habeas petition) *with* ECF No. 10-1, Ex. 30 (memorandum in support of jurisdiction)).

Respondent argues that these grounds are non-cognizable and procedurally defaulted. (ECF No. 10 at 14–18, 27–28). First, Respondent contends that neither ground implicates a federal

constitutional right. (ECF No. 10 at 14–18). Second, Respondent argues that Petitioner procedurally defaulted on his claims in Grounds Three and Four as he failed to allege them in his appeal to the Supreme Court of Ohio. (ECF No. 10 at 27). Respondent claims Petitioner has not demonstrated any cause or prejudice. (ECF No. 10 at 27–28).

The Court need not consider whether Grounds Three and Four are cognizable as Petitioner clearly procedurally defaulted on these claims by failing to bring them before the Supreme Court of Ohio. By failing to include these claims in his appeal, Petitioner did not exhaust the issues in the Ohio state courts. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." (citations omitted)). As Petitioner can no longer bring this argument to state court under Ohio Appellate Rule 4(A)(1) and Ohio Revised Code § 2953.21(A)(2)(a), his argument is procedurally defaulted. *See Adams*, 2016 WL 6610219, at *2 ("When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." (citing O'Sullivan, 526 U.S. at 848)). Moreover, petitioner has made no showing of cause or prejudice. Thus, the Court cannot review the grounds now and recommends they be dismissed.

## B. Remaining Claims Reviewed on the Merits

### A. Ground One

In Ground One, Petitioner argues that his "[g]uilty plea was not made knowingly and voluntarily in violation [of] the Due Process Clause of the 14th Amendment [and *Boykin v. Alabama*, 395 U.S. 238 (1967)]." (ECF No. 1 at 6). Petitioner initially brought this ground on direct appeal, and the Ohio Court of Appeals rejected the claim. (ECF No. 10-1, Ex. 23 (Petitioner's appellate brief), Ex. 28 (appellate court opinion)). He subsequently appealed the claim

to the Ohio Supreme Court, which declined to accept jurisdiction of the appeal. (ECF No. 10-1, Ex. 30 (memorandum in support of jurisdiction), Ex. 32 (Supreme Court judgment entry)).

Respondent admits that Petitioner exhausted this claim in state court, instead arguing the ground is meritless. (ECF No. 10 at 40–41). Respondent argues "Petitioner's pleas were entered knowingly, voluntarily, and intelligently, and that the trial court made sure that they were entered knowingly, voluntarily, and intelligently." (ECF No. 10 at 39). Moreover, Respondent contends that Petitioner "has not demonstrated that the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." (ECF No. 10 at 40). Even if the state court erred in rejecting this claim, Respondent argues the error is harmless since Petitioner "cannot demonstrate that, but for the alleged error, he would not have pleaded guilty." (ECF No. 10 at 41).

A valid guilty plea must be knowingly and voluntarily made, based on the totality of the circumstances. *Boykin*, 395 U.S. at 242–44; *Brady v. United States*, 397 U.S. 742, 749 (1970); *Bousley v. United States*, 523 U.S. 614, 618 (1998); *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). To enter a valid guilty plea, the defendant must know the nature and elements of the charges against him, as well as the constitutional rights he forfeits by pleading guilty. *See Boykin*, 395 U.S. at 243; *Marshall v. Lonberger*, 459 U.S. 422, 436 (1983) ("It is well established that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'") (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).

In Ohio, trial courts must also comply with Rule 11 of the Ohio Rules of Criminal Procedure when obtaining a guilty plea in a felony case. Ohio Crim. R. 11. Rule 11 mandates that

courts: (1) "Determine[] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved," (2) "Inform[] the defendant of and determine[] that the defendant understands the effect of the plea of guilty," and (3) "Inform[] the defendant and determine[] that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." *Id.* Ohio appellate courts consider whether a trial court followed Rule 11 in determining whether a guilty plea is valid under federal law. *See State v. Veney*, 2008-Ohio-5200, ¶ 29 (Ohio 2008) (citing *Boykin*, 395 U.S. at 243; *State v. Ballard*, 66 Ohio St.2d 473, 481 (Ohio 2008)).

On direct appeal, the Ohio Court of Appeals reviewed Petitioner's claim and found that the trial court had correctly applied the law:

> {¶16} Weathersbee's first supplemental assignment of error states:
>
> > [1(b).] PETITIONER'S GUILTY PLEA WAS NOT KNOWINGLY AND VOLUNTARY UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
>
> {¶17} Weathersbee and his former appellate counsel both assert his guilty plea was not knowingly, intelligently, and voluntarily entered because he was forced into pleading guilty due to his trial counsel being unprepared to try the case. There is nothing in the record to support this contention. Trial counsel is an experienced criminal trial attorney. He unequivocally stated he was prepared to go forward with trial on the date set. He expressed concern as to the gravity of the charges Weathersbee was facing. There is no requirement that counsel assess the chances to succeed at trial in a more favorable light than a defendant would like.
>
> {¶18} A criminal defendant who enters a plea of guilty or no contest waives certain constitutional rights, thus the waiver must be made

knowingly, intelligently, and voluntarily. *State v. Stewart*, 51 Ohio St.2d 86, 92-93 (1977). Crim.R. 11(C)(2) sets forth the procedure a trial judge must follow when accepting a plea in felony cases:

> [T]he court * * * shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
>> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>>
>> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>>
>> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶19} Compliance with Crim.R. 11 "ensures that defendants enter pleas with knowledge of rights that they would forgo and creates a record by which appellate courts can determine whether pleas are entered voluntarily." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶11, citing *State v. Nero*, 56 Ohio St.3d 106, 107 (1990). "When a trial judge fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), the guilty or no-contest plea is invalid 'under a presumption that it was entered involuntarily and unknowingly.'" *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶31, quoting *Griggs*, supra, at ¶12.

{¶20} The Ohio Supreme Court has instructed that a trial court must strictly comply with Crim.R. 11(C) as it relates to the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶18, citing *State v. Ballard*, 66 Ohio St.2d 473, 479

(1981). Failure to literally comply with the language of Crim.R. 11(C)(2)(c) does not, however, invalidate a plea agreement so long as the record demonstrates that the trial court explained or referred to the constitutional rights """"in a manner reasonably intelligible to that defendant."""" *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, ¶14, quoting *Veney*, supra, at ¶27 (emphasis sic), quoting *Ballard*, supra, at paragraph two of the syllabus.

{¶21} Weathersbee lists a series of alleged violations by the trial court, which he argues invalidates his guilty plea. These alleged violations include: (1) unnamed violations of federal law, including the due process clause of the Fourteenth Amendment; (2) not receiving notice of the elements of his crimes; (3) the trial court "improperly participat[ing] in the plea negotiations"; (4) Weathersbee's expectation to go to trial in the matter; (5) the trial court failing to appoint new counsel; and (6) the state changing the plea offer once it was rejected prior to trial.

{¶22} Contrary to Weathersbee's contention in this regard, the record reflects he was fully advised by the trial court. The court strictly complied with Crim.R. 11, and the responses from Weathersbee indicate that he subjectively understood the implications of his plea and the rights he was waiving under the totality of the circumstances. The colloquy reproduced above, as well as the "Finding on Guilty Plea to Amended Indictment" document in the record signed by Weathersbee and incorporated into the colloquy, demonstrates as much. Conjecture regarding Weathersbee's sentencing following the guilty plea is inappropriate in light of the agreed plea and stipulated sentence, which the trial court was within its discretion to accept and impose.

{¶23} The sole assignment of error offered by Weathersbe's former appellate counsel and Weathersbee's first supplemental assignment of error are without merit.

*Weathersbee*, 2019-Ohio-5307, at ¶¶ 16–23.

Under AEDPA, this Court must find the Ohio appellate court's application of the law or interpretation of the facts unreasonable to grant the instant claim. Petitioner does not argue how the above-quoted state appellate court's determination was contrary to or an unreasonable application of law. Further, the appellate court clearly reviewed Petitioner's colloquy at his change of plea and reasonably found that the trial court notified Petitioner of the nature and elements of

his charges and the constitutional rights he forfeited by pleading guilty. *Id.* at ¶ 22. Additionally, the appellate court correctly noted that Petitioner's statements to the trial court indicated that he understood his constitutional rights and that he would forfeit them by pleading guilty. *Id.* at ¶¶ 10–11, 22. Thus, the appellate court reasonably interpreted the facts of the case and correctly applied Rule 11 of the Ohio Rules of Criminal Procedure in reviewing Petitioner's claim. Accordingly, Petitioner has failed to overcome AEDPA's highly deferential standard. He has not shown that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 101–04). As this Court's review indicates that the appellate court's factual review was supported by the record and its legal analysis correctly applied the law, this claim should be dismissed as meritless.

## B. Ground Two

In habeas ground two, Petitioner claims he was denied effective assistance of counsel, in violation of the Sixth Amendment. (ECF No. 1 at 8). He lists ten specific instances where his counsel was deficient in the supporting facts:

> (1) Counsel was unprepared for trial on day scheduled to begin. (2) Refused to take the case to trial. (3) Refused to investigate exculpatory evidence. (4) Repeatedly coerced Petitioner to plead guilty including stating "I will hold your hand and lead you to a three-day slaughter," which he admitted saying in court. (5) Counsel refused Petitioner's insistence of innocence. (6) Counsel prepared no defense since he refused to take the Court to trial. He refused to mount a defense. (7) Counsel refused to discuss or investigate any (8) Petitioner pled guilty because he had no attorney willing to defend him, offer a defense, or go to trial. (9) Petitioner completed prejudicial by attorney's deficiencies in action, and lack of participation in defense. (10) The proceedings would have been different if Petition[er] had an attorney to go to trial. (See pgs. 25-33 of "Amended supplemental assignment of error and brief of appellant") + (pgs. 37 + 38) Counsel's conduct so undermined the proper functioning of the adversarial process that the plea cannot be

relied upon as having produced a just result, reducing the proceedings to be hollow formalities upon manifest injustice.

(ECF No. 1 at 8). Petitioner initially brought this ground on direct appeal, where the Ohio Court of Appeals addressed Petitioner's cited examples and rejected the claim. (ECF No. 10-1, Ex. 23 (Petitioner's appellate brief), Ex. 28 (appellate court opinion)). He subsequently appealed the claim to the Supreme Court of Ohio, which declined to accept jurisdiction of the appeal. (ECF No. 10-1, Ex. 30 (memorandum in support of jurisdiction), Ex. 32 (Supreme Court judgment entry)).

Respondent argues that this claim is meritless since it fails to satisfy a two-part test in *Strickland v. Washington*, 466 U.S. 688 (1984). (ECF No. 10 at 46). Additionally, Respondent contends that Petitioner has failed to demonstrate that the appellate court's application of the law was unreasonable. (ECF No. 10 at 46).[3]

A petitioner must meet the two-part *Strickland* test to prevail on an ineffective assistance of counsel claim. First, the petitioner must demonstrate that, considering all the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 688. In so doing, the petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Second, the petitioner must show that such performance prejudiced his defense. *Id.* at 692. "In the context of pleas, to demonstrate prejudice, the "defendant must show the outcome of the plea process would have been different with competent advice."

---

[3] Respondent also argues that "[t]o the extent that [Petitioner's] second ground for relief relies on outside the record evidence, the claim is unexhausted." (ECF No. 10 at 23). Respondent then argues that Claimant did not exhaust these specific claims as he did not file a postconviction petition with the trial court, pursuant to Ohio Revised Code § 2953.21. However, Respondent does not elaborate on how Petitioner's second ground relies on extrinsic evidence and later reviews the ground on the merits. (*See* ECF No. 10 at 23–27). Thus, the Court is unclear on what part of the ground Respondent believes is unexhausted and will accordingly review the ground on the merits.

*Lafler v. Cooper*, 566 U.S. 156, 163 (2012). "When a state prisoner asks a federal court to set aside

a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that

the federal court use a 'doubly deferential' standard of review that gives both the state court and

the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal

citations and quotations omitted).

 The Ohio appellate court reviewed Petitioner's claim in its decision:

> {¶24}  Weathersbee's second supplemental assignment of error
> states:

>> [2.]   PETITIONER   WAS   DENIED   EFFECTIVE
>> ASSISTANCE OF COUNSEL AT TRIAL IN VIOLATION
>> OF THE SIXTH AMENDMENT.

> {¶25} Under his second assignment of error, Weathersbee lists the
> following issues for review, which we combine and consider
> accordingly:

>> [i.] Failure to discuss and investigate facts of the case with
>> the defendant;

>> [ii.] Did not interview potential witnesses;

>> [iii.] Did not review evidence in support of the charges;

>> [iv.] Told the defendant that he would be found guilty and
>> sentenced to the maximum sentence regardless whether [sic]
>> he had committed the crime and that would [sic] not take
>> case to trial;

>> [v.] Failed to discuss defense tactics, strategies or the nature
>> and effect of his guilty plea(s);

>> [vi.] Made no effort to produce mitigation evidence at the
>> sentencing hearing;

>> [vii.] Further evidence that counsel was ineffective and
>> conflicted.

> {¶26} In order to prevail on an ineffective assistance of counsel
> claim on direct appeal, an appellant must demonstrate from the

record that trial counsel's performance fell "below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus (adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 143.

{¶27} There is a general presumption that trial counsel's conduct is within the broad range of professional assistance. Id. at 142. Debatable trial tactics generally do not constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). In order to show prejudice, the appellant must demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Bradley*, supra, at paragraph three of the syllabus.

{¶28} The Ohio Supreme Court has addressed the duty owed by an attorney to a client when discussing the potential legal outcome of a case in *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶151, where the court stated, in pertinent part:

> As we held in [*State v. Cowans*, 87 Ohio St.3d 68, 73 (1999)], " ' "A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism." ' *Brown v. United States* (C.A.D.C.1959), 264 F.2d 363, 369 (en banc), quoted in *McKee v. Harris* (C.A.2, 1981), 649 F.2d 927, 932. ' "If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice." ' " *Cowans*, 87 Ohio St.3d at 73, 717 N.E.2d 298, quoting *McKee*, 649 F.2d at 932, quoting *McKee v. Harris* (S.D.N.Y.1980), 485 F.Supp. 866, 869.

{¶29} Further, "[w]hen affidavits or other proof outside the record are necessary to support an ineffective assistance claim * * * it is not appropriate for consideration on direct appeal." *Supra*, at *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶4, citing *State v. Madrigal*, 87 Ohio St.3d 378, 390-391 (2000). Those claims are appropriately brought by way of a motion for post-conviction relief.

{¶30} Based on the record before us, Weathersbee was given a candid assessment of his legal options. His counsel met with an expert and declined to utilize the expert based on the meeting. Counsel's legal opinion, as stated on the record, was that no expert testimony would help in Weathersbee's defense given the circumstances. Nothing in the record before us suggests this assessment is inaccurate. Counsel also stated on the record that he was prepared to go forward with a trial, and that his advice to Weathersbee—no matter how candid and blunt—was his legal opinion regarding the likely outcome given the evidence possessed by the state.

{¶31} As was discussed at length on the record by both defense counsel and the prosecutor, Weathersbee was made aware of the pending plea offers from the state throughout the time between the indictment and trial, and he continued to reject those offers until the day of trial. Further, Weathersbee's own statement to the trial court during the colloquy was that he was satisfied with his counsel and in agreement that "they've done everything they could on [Weathersbee's] behalf."

{¶32} Finally, Weathersbee's assertions about what he was told or what was discussed with him by appointed counsel, without supporting evidence, "would require this Court to act in a way that is 'purely speculative' and would require [us to] resort to evidence outside the record on appeal." *Zupancic*, *supra*, at ¶5. Nothing in the record before us supports Weathersbee's claim that his counsel was ineffective.

{¶33} Weathersbee's second supplemental assignment of error is without merit.

*Weathersbee*, 2019 WL 7168044, ¶¶ 24–33.

The Court concludes that the appellate court's decision is consistent with clearly established Supreme Court precedent. The appellate court reviewed the record and Petitioner's attorney's preparation and representation at trial and found that it was not deficient. *See id.* at ¶¶ 30–32. Likewise, the appellate court properly applied the *Strickland* standard, noting that it need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at ¶ 26. Thus, it did not err in failing to discuss whether Petitioner was prejudiced by

his attorney's performance as it found the attorney's performance was not deficient. As Petitioner has not demonstrated how the appellate court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law," his claim fails. *Dixon*, 565 U.S. at 24. The Court accordingly recommends this claim be dismissed since it is meritless.

## VII.   Certificate of Appealability

### A.  Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.  Analysis

Petitioner's grounds for relief are procedurally defaulted or meritless. If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VIII.   Recommendation

Petitioner has presented only procedurally defaulted or meritless claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

Dated: April 25, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).